IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MITCHELL CUPP, #03083127, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3:04-CV-0953-P |
| v. | § | |
| | § | |
| ROCKY CLAYTON, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is Defendant's Motion for Summary Judgment, filed January 14, 2005.[1] After considering the parties' arguments, the briefing, and the applicable law, the Court DENIES Defendant's Motion for Summary Judgment.

**I.   Factual and Procedural Background**

On November 5, 2003, Plaintiff Mitchell Cupp ("Cupp") was booked into the Dallas County Jail, charged with unauthorized use of a vehicle and evading arrest. (Def.'s App. at 26.) Cupp had sustained several injuries while evading arrest, and for this reason, soon after Cupp's arrest, x-rays were requested for his right shoulder, humerous, elbow, forearm and wrist as well as his left ankle. (Def.'s App. at 50, 52; Pl.'s Resp. to Mot. at 3.) A few months later, while still in jail, Cupp was confronted by Defendant Rocky Clayton ("Clayton"), an officer of the Dallas County Sheriff's Department ("DCSD") assigned to duty in the Dallas County Jail. (Resp. to Magistrate Judge's

---

[1] Plaintiff filed a Response on February 15, 2005, and Defendant filed a Reply on March 1, 2005. Plaintiff also filed a Sur-Reply on March 11, 2005. As Defendants do not object to this filing, the Court considers it in determining the Motion.

Questionnaire at 3; Def.'s App. at 47.) The facts surrounding the confrontation are largely in dispute.

According to Cupp, he was gathered with a large group of inmates in a hallway on the ninth floor when Sergeant Linda Sanders ("Sanders") asked the inmates to clear a path so that she could walk through. (Resp. to Magistrate Judge's Questionnaire at 3.) Because all of the inmates were talking loudly, Cupp did not hear Sanders and did not move to let her pass. (Resp. to Mot. at 1-2.) Consequently, Sanders walked over to Cupp and asked him to step aside. *Id.* At this request, Cupp addressed Sanders with respect and moved aside. *Id.* Sanders then passed through with Clayton. (Resp. to Magistrate Judge's Questionnaire at 3.) Clayton promptly came "storming back," yelling at Cupp, "You think your bad! I'm bad! Let me see your arm band." *Id.* Although Cupp put his arm band out for Clayton to see, Clayton grabbed Cupp's right hand, squeezing and twisting it so forcefully that he dislocated Cupp's right thumb, causing a large knot to form on Cupp's right thumb and the palm of his hand. *Id.* at 3-4, 6. Cupp was not charged with a disciplinary violation related to this incident. *Id.* at 5.

Within the next hour, Clayton and another officer, N. Leija ("Leija"), took Cupp to see the Nurse. (Resp. to Magistrate Judge's Questionnaire at 3.) When the nurse asked Cupp what happened to his hand, Cupp responded, "Ask Officer Clayton. He done it," and Officer Clayton countered, "I'm not that strong." *Id.* The nurse scheduled an x-ray. *Id.*

A few days later, Officer Ditta ("Ditta") took Cupp to receive the x-ray. *Id.* The woman who performed the x-ray showed Cupp and Ditta the results and pointed out torn tissue in Cupp's thumb. *Id.* Cupp and Ditta could clearly see the torn tissue, but Cupp received no further medical treatment for his hand. *Id.* Cupp made numerous requests for a copy of his x-ray results, but he was

not given a copy. *Id.* Instead, the Grievance Committee of the DCSD provided Cupp with a memo indicating that "no dislocations were found" in x-rays done on November 17, 2003. *Id.* at 3, 8. However, the x-rays done on November 17, 2003 were unrelated to the confrontation between Cupp and Clayton. *Id.* at 3.

Clayton's version of the events is significantly different. According to Clayton, Cupp shouted at Sanders in a disrespectful manner after she passed through the inmates. (Def.'s App. at 47.) For this reason, Clayton approached Cupp and instructed him not to disrespect Sanders. *Id.* Cupp began to argue with Clayton; so Clayton asked to see his armband, and Cupp refused to let him see it. *Id.* Clayton claims he did not grab Clayton's wrist, but that he lifted Cupp's arm to look at his armband. *Id.* at 33, 47. Additionally, Clayton claims that when he took Cupp to the nurse, Cupp told the nurse he wasn't sure what happened, but that he might have hurt his wrist in the gym. *Id.*

Approximately two months after the incident, a comparative medical evaluation of Cupp's thumb was done. *See id.* at 58. The clinical notes from this evaluation indicate the complete healing of a tiny avulsion and mild osteoporosis in Cupp's right thumb. *Id.* The notes also indicate that the osteoporosis may have resulted from disuse of the thumb. *Id.*

Cupp filed his Original Complaint *pro se* on May 5, 2004, asserting a claim for excessive force against Clayton under 42 U.S.C. § 1983. Clayton now moves for summary judgment, arguing that Cupp has failed to state a claim and that Clayton is entitled to qualified immunity.

## II.   Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Id.*

### III. Plaintiff's § 1983 Claim

Clayton moves for summary judgment, arguing that Cupp has failed to state a claim because any force used against Cupp was reasonable and necessary to maintain institutional security within the Dallas County Jail. Alternatively, Clayton argues that Cupp's claim is barred by the doctrine of qualified immunity. The Court will address each argument in turn.

#### A. Excessive Force Claim– Due Process Violation

It is well established that the Constitution protects both prisoners and pretrial detainees from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), by prohibiting jail officials and law enforcement officers from using excessive force in their dealings with inmates. Convicted prisoners accordingly may assert a constitutionally protected right against the State to be free from cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). Pretrial detainees, by comparison, can draw on the procedural and substantive due process guarantees of the Fourteenth Amendment to claim rights that are at least coextensive with the rights of prisoners. *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993); *see also Bell v. Wolfish*, 441 U.S. 520, 536 (1979).

In determining whether a jail official has employed excessive physical force against an inmate in violation of the inmate's constitutional rights, the court "must ask both if 'the official[]

act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

With regard to the official's state of mind, the appropriate inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Rankin v. Klevenhagen*, 5 F.3d 103, 106-07 (5th Cir. 1993) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)). Although there is often no direct evidence of subjective intent, the following factors may be circumstantial evidence of intent: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need for and the amount of force used, (4) the threat reasonably perceived by the defendant, and (5) any efforts made to temper the severity of a forceful response. *Id.* at 107.

To demonstrate that the alleged wrongdoing was "harmful enough," a plaintiff raising an excessive use of force claim must show that the alleged use of force caused more than a *de minimus* injury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *see also Hudson*, 503 U.S. at 2. However, there is no requirement that the injury be "significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *see also Hudson*, 503 U.S. at 7. Even a minor injury may support a plaintiff's claim if the force used was excessive to the need for it. *Hudson*, 503 U.S. at 7*; Gomez,* 163 F.3d at 924.

Clayton argues that the force he applied in his confrontation with Cupp was not excessive because it was necessary to maintain institutional security and restore discipline. Accepting Cupp's version of the facts as true, the Court finds this argument persuasive, but not dispositive. Clayton

could have reasonably perceived that Cupp refused to move out of Sanders' way in order to disrespect or harass Sanders. Having this perception, Clayton may have in good faith confronted and handled Cupp to demonstrate to Cupp and other watchful inmates that such disrespect would not be tolerated. However, there is a fact issue on whether the degree of force Clayton used in squeezing and twisting Cupp's hand was necessary in light of Cupp's contention that he put his armband out when asked to do so.

Clayton offers evidence of a comparative medical evaluation of Cupp's thumb done a couple months after the confrontation. (Def.'s App. at 58.) This evaluation indicates the complete healing of a tiny avulsion and mild osteoporosis. *Id.* Webster's Collegiate Dictionary defines "avulsion" as "a forcible separation or detachment" and "a tearing away of a body part." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 80 (10th ed. 1999). Webster's Collegiate Dictionary defines "osteoporosis" as "a condition . . . characterized by a decrease in bone mass with decreased density and enlargement of bone spaces producing porosity and fragility." *Id.* at 823. The use of these terms in relation to Cupp's injury indicates to the Court that Cupp suffered a more than *de minimus* injury to his right hand and thumb.

Clayton argues that "there is no evidence to indicate that the injury was not caused by any number of incidents," including those Cupp sustained when he evaded arrest. (Br. in Supp. Mot. Summ. J. at 5.) The Court disagrees. Cupp has declared under penalty of perjury that Clayton's twisting and squeezing of his hand caused the injury. (Resp. to Magistrate Judge's Questionnaire at 3.) Clinical notes indicate that when Cupp visited the nurse on the same day as the incident, his right hand and thumb were swollen. (Def.'s App. at 54.) Moreover, although Plaintiff did previously complain about an injury to his right wrist, Plaintiff had not previously complained of

any injury to his right hand or thumb. (Def.'s App. at 50, 52; Pl.'s Resp. to Mot. at 3.) The Court regards this evidence as sufficient to create a fact issue precluding summary judgment. Accordingly, summary judgment on this basis is denied, and the Court must determine whether Cupp's claim is barred by qualified immunity.

### B.   Qualified Immunity

The defense of qualified immunity "shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Pfannsteil v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). This shield of qualified immunity is generally available to officers, such as Clayton, sued under § 1983. *See Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Pfannsteil*, 918 F.2d at 1183.

In *Siegert v. Gilley*, 500 U.S. 226 (1991), the Supreme Court set forth the analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity. First, a court must ascertain whether the plaintiff has alleged a constitutional violation. *Id.* at 231-2; *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Porter v. Ascension Parish School Bd.*, 393 F.3d 608, 613-14 (5th Cir. 2004). If the plaintiff has established a constitutional violation, the court must next determine whether the constitutional right was clearly established at the time the alleged conduct occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Porter*, 393 F.3d at 614. Finally, the court must examine whether the defendant's conduct

was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231-2 (1991); *Porter*, 393 F.3d at 614. The plaintiff has the burden of coming forward with summary judgment evidence sufficient to create a genuine issue as to whether the defendant's conduct was objectively reasonable in light of clearly established law, and the Court must review the evidence in the light most favorable to the plaintiff. *Pfannsteil*, 918 F.2d at 1183.

Cupp has alleged a violation of his substantive due process rights. Accordingly, the Court must examine whether Clayton's use of force was objectively reasonable. However, as material questions of fact exist regarding whether Clayton's use of force was excessive to the apparent need for it, the Court cannot resolve this issue on summary judgment. The objective reasonableness of Clayton's use of force must be viewed in the context in which it was applied. Because the circumstances surrounding Clayton's use of force are disputed, summary judgment on this basis is denied.

IV.   **Conclusion**

For the above-stated reasons, Clayton's Motion for Summary Judgment is DENIED.

**It is so ordered.**

Signed this 7th day of June 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE